EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-183-GWU

CHARLES F. GORDON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Charles Gordon originally brought <u>Gordon v. Astrue</u>, London Civil Action No. 06-525-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). After a period of administrative reconsideration prompted by the court's Memorandum Opinion, Order, and Judgment of September 12, 2007 (Tr. 399-408), it is before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient,

if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Gordon, a 51-year-old former electrician with a high school education, suffered from impairments related to degenerative disc disease of the lumbosacral spine, grade I spondylolisthesis at L5-S1, being status post L5 laminectomy with bilateral L4-L5 medial facetectomies, L5-S1 posterior lateral with TSRH-3D pedicle screw fixation and autologous bone graft and right posterior iliac crest bone graft harvesting, degenerative disc disease of the thoracic spine, morbid obesity and obstructive sleep apnea.  (Tr. 350-351, 388).  For the time period between June 22, 2004 and June 22, 2005, the ALJ found that the plaintiff equaled the requirements of Section 1.03 of the Listing of Impairments and, so was disabled for this closed period. (Tr. 379-380).  After June 23, 2005, the ALJ determined that the claimant would be able to perform a restricted range of light level work.  (Tr. 381-382).  Since the available work was found to constitute a significant number of jobs in the national economy, Gordon

4

could not be considered totally disabled. (Tr. 389-390, 392). The ALJ based this portion of the decision, in large part, upon the testimony of a vocational expert. (Tr. 390).

Gordon seeks judicial review of the unfavorable portion of the administrative decision. After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented by the ALJ to Vocational Expert William Ellis included all of the physical restrictions identified by Dr. Allan Levine, who testified at the administrative hearing as a medical advisor, in addition to including Gordon's age, work background and educational level. (Tr. 678). The physical limitations of Dr. Levine included (1) an inability to lift more than 15 pounds occasionally and 10 pounds frequently; (2) an inability to stand for more than 45 minutes at a time with breaks of two to three minutes for a total of four hours in an eight-hour day; (3) an inability to walk for more than 30 minutes at a time with breaks of two to three minutes for a total of four hours in an eight-hour day; (4) an inability to perform a combined amount of standing and walking for just under eight hours a day; (5) an inability to more than occasionally climb stairs, kneel, crouch and stoop; and (6) an inability to ever climb ladders, work at unprotected heights, operate heavy, vibrating machinery, or work at temperatures less than 40 degrees.

(Tr. 667-671). In response, Ellis identified a significant number of jobs in the national economy which could still be performed including hand packer (315,000 national jobs), production worker (300,000 national jobs), and inspector (98,000 national jobs). (Tr. 679). The ALJ then inquired as to the effect of a sit/stand option on the available job base. (Tr. 680). The witness initially indicated that this would produce a 50 percent reduction in the number of available jobs. (Id.). The ALJ then called attention to the discrepancy between the 15 pound maximum lifting restriction of the hypothetical question and the usual 20 pound maximum weight lifting limit of light level work. Ellis estimated that this would reduce the available job base by 25 percent and indicated that the job numbers he cited in response to the second hypothetical question would remain because he had imposed too great a reduction for the sit/stand option. (Tr. 681). Therefore, assuming that the vocational factors considered by the expert fairly characterized the plaintiff's condition during the relevant time period, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

In evaluating the medical record, the ALJ relied heavily upon the opinion of Dr. Levine, the medical advisor. Dr. Levine testified that Gordon's back problems would have equaled the requirements of Section 1.03 of the Listing of Impairments concerning reconstructive surgery or surgical arthrodesis of a major weight-bearing joint for the time period between June 22, 2004 and June 22, 2005 and this testimony provided the basis for the ALJ's finding of a closed period of disability.

(Tr. 664-665). The major reason for this finding was the physician's belief that an individual would need a one-year time period to recover from the spine fusion surgery he underwent on June 22, 2004. (Tr. 664). As of June 23, 2005, the doctor found no evidence in the record of any nerve root or spinal cord compromise to meet or equal a Listing. (Tr. 665). Dr. Levine cited a September 29, 2004 report from Dr. Brett Scott of Neurological Associates who noted x-ray evidence of good fusion mass developing and a February 18, 2005 MRI scan revealing that the fusion was stable. (Tr. 152, 183, 665). Dr. Levine noted that Dr. Rami Kawash, an examining consultant, found no sign of motor or sensory deficit and no sign of nerve root compromise during a June, 2005 examination. (Tr. 665). Reflexes were normal. (Tr. 169, 665). The advisor reported that treatment records from as late as November, 2009 from Dr. Richard Park, a treating source, showed no significant abnormalities suggesting that a Listing was met or equaled. (Tr. 471-480, 665). Dr. Levine indicated that after June 22, 2005, the plaintiff would be physically restricted by those limitations noted in the aforementioned hypothetical question. (Tr. 667-671). The ALJ relied upon this testimony to support the administrative denial decision. (Tr. 381-388).

Gordon agues that medical improvement following the closed period of disability was not established. However, the aforementioned testimony of Dr. Levine establishes medical improvement. While the plaintiff equaled the Listing during the one-year post-surgical convalescence period, the doctor clearly indicated

7

that the modest laboratory and examination findings he cited supported a finding that the claimant's condition improved after this convalescence period was over. (Tr. 665-666). This testimony was cited by the ALJ in his finding that medical improvement occurred. (Tr. 381). Gordon asserts that a November, 2007 MRI scan showed disc protrusion at L4-L5 contradicting the expert's statement that there was no evidence of any disc protrusion. (Tr. 561, 661). However, the encroachment was said to be "mild." (Tr. 561). Furthermore, this November, 2007 MRI scan was obtained long after the expiration of the claimant's DIB-insured status.[1] Therefore, the court must reject the plaintiff's argument.

Gordon asserts that the ALJ erred by failing to cite good reasons for rejecting the opinions of the treating sources. Dr. Scott, the treating neurosurgeon, restricted the plaintiff from lifting more than 10 pounds following the June, 2004 surgery and never indicated that this lifting restriction had ceased to apply. (Tr. 130, 152-157). The undersigned reversed and remanded the initial June 28, 2006 denial decision because the ALJ did not deal properly with this opinion. (Tr. 406). Dr. Park, another treating source, limited Gordon to less than a full range of sedentary level work in February of 2005 and opined in May of 2005 that the claimant was totally

---

[1] The ALJ indicated that Gordon's DIB-insured status expired on March 31, 2006. (Tr. 350). This was the same date last insured found by the ALJ in June of 2006. (Tr. 15). The plaintiff asserts that as a result of the ALJ's finding of a one-year closed period of disability, his DIB-insured status lasted until March 31, 2007. This would still be long before the November, 2007 MRI scan was obtained.

8

disabled.² (Tr. 176, 301). The court finds that these opinions have been properly addressed.

In the present action the ALJ cited the testimony of Dr. Levine in support of the reason to reject these opinions of the treating sources. (Tr. 385-386). With regard to Dr. Scott's opinion, Dr. Levine noted that these restrictions were issued following surgery and would only apply during the post-operative recovery period. (Tr. 673-674). The expert also indicated that the February, 2005 restrictions of Dr. Park were within the surgical recovery time period and would only apply until the spinal fusion became solid. (Tr. 674-675). As previously noted, Dr. Levine identified a number of modest clinical and laboratory findings in support of his far more modest physical restrictions which he indicated were applicable after June 23, 2005 and the ALJ accepted these findings in assessing the claimant's condition. (Tr. 381-382). With regard to Dr. Park's May, 2005 disability statement,³ as noted by the ALJ in the first denial decision, this was a finding reserved to the Commissioner under the federal regulations at 20 C.F.R. § 404.1527(e)(1) and Social Security Ruling (SSR) 96-5p. (Tr. 18-19). An ALJ may rely upon the opinion

---

²The court, while indicating that Dr. Park provided at least some objective medical evidence to support the plaintiff's claim, did not find any error with the prior ALJ's decision to reject the physician's functional restrictions and disability opinion. (Tr. 407).

³Dr. Park also alluded to restrictions concerning "long" standing, sitting, bending, twisting, squatting or stooping. (Tr. 301). These vague limitations are arguably consistent with the restrictions presented in the hypothetical question.

of a non-examiner over that of an examining source when the non-examiner reviews the record and clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, the undersigned rejects the plaintiff's argument.

The current record also contains a Physical Capacities Assessment completed on April 20, 2010 by Gloria Taylor, a nurse-practitioner in the office of Dr. Park, identifying extremely severe physical restrictions. (Tr. 548-549). The ALJ rejected this opinion as binding for a number of reasons, including the opinion of Dr. Levine that the restrictions were extreme in relation to the medical evidence (Tr. 666-667), that they were well outside the relevant time period, and the fact that this was the opinion of someone who was not an "acceptable medical source" under the federal regulations at 20 C.F.R. § 404.1513 (Tr. 386-387). Therefore, this opinion was properly rejected.

Gordon also argues that the current ALJ erred by failing to find that he was illiterate. The plaintiff asserts that if he had been found to be illiterate, then Rule 202.09 of the Medical-Vocational Guidelines would mandate a finding of disabled status for one of his age and work background. The claimant notes that a finding of illiteracy was made in the prior administrative denial decision and the current ALJ did not have good reasons to make a different determination.

The court notes that while the prior ALJ did include illiteracy among the restrictions in the residual functional capacity assessment,[4] he also found that Gordon had a high school education. (Tr. 18-19). Thus, the prior ALJ made inconsistent findings. As acknowledged by both parties, the prior denial decision was reversed by the action of this court and, so had no binding effect. The plaintiff initially testified that he could read and write and had graduated from high school. (Tr. 305). The claimant later indicated that he had problems reading and this resulted in poor grades in high school. (Tr. 325-326). Upon remand, the ALJ considered the issue of the plaintiff's level of education and ultimately concluded that he had a high school education despite his claims of reading difficulties. (Tr. 388). The ALJ noted that the record indicated that the claimant had graduated from high school despite poor grades. (Tr. 109, 388, 622). Gordon testified that he was in regular classes rather than special education during his high school years. (Tr. 389, 641-642). Intelligence testing during his high school years revealed him to be of low average intelligence. (Tr. 111, 388). Gordon had a history of performing the skilled work of an electrician. (Tr. 389, 678). The plaintiff indicated that he had passed a written driver's test. (Tr. 389, 644). The Administrative regulations state that "illiteracy means the inability to read or write. We consider someone illiterate

---

[4] Illiteracy appears to have been somewhat gratuitously included as a functional restriction in order to accommodate the plaintiff's claims of reading problems due to alleged dyslexia. (Tr. 329-330).

if the person cannot read or write a simple message such as instructions or inventory lists even though the person can write his or her name. Generally, an illiterate person has little or no schooling." 20 C.F.R. § 404.1564(b)(1). The factors cited by the ALJ do not suggest that the claimant was illiterate and, so, support the administrative decision. Therefore, the court finds that the current ALJ properly concluded that Gordon was not illiterate.

      Finally, Gordon asserts that the ALJ erred by failing to resolve an obvious conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles (DOT) after being put on notice of the discrepancy. As noted by the plaintiff, the DOT indicates that the jobs of hand packer (DOT No. 920.687-010), production worker (DOT No. 739.687-030), and inspector (DOT No. 526.687-010) cited by Ellis all require lifting up to 20 pounds. However, the plaintiff was found limited to lifting no more than 15 pounds and this restriction was included in the hypothetical question. The claimant asserts that the ALJ was put on notice of this discrepancy between the DOT and the vocational testimony and it was not resolved during the hearing as required under SSR 00-4p, mandating a remand of the action for further consideration. Lindsley v. Commissioner of Social Security, 560 F.3d 601, 603 (6th Cir. 2009). However, the vocational expert was asked about the discrepancy and reported that the reduction in maximum weight lifting from 20 pounds to 15 pounds would result in no more than a 25 percent reduction in job numbers. (Tr. 682). The expert specifically indicated that this estimate was based

upon his experience. (Id.). SSR 00-4p indicates that a vocational expert's experience in job placement and career counseling is a reasonable ground to rely upon his testimony in resolving an apparent conflict with the DOT. The ALJ cited this statement in support of his decision to rely upon the testimony of the vocational expert. (Tr. 391-392). Therefore, the apparent conflict between the DOT and the vocational testimony was addressed and resolved by the ALJ as required under SSR 00-4p. Therefore, the court finds that the ALJ dealt adequately with the discrepancy and finds no error.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of March, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**